# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

LONDON DESHANN HARRIS,

     Petitioner,          Case Number 2:18-CV-12168
                                HONORABLE DENISE PAGE HOOD
v.                           CHIEF NITED STATES DISTRICT JUDGE

WILLIS CHAPMAN,

     Respondent,
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

London Deshann Harris, ("Petitioner"), confined at the Thumb Correctional Facility in Lapeer, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree felony murder, M.C.L.A. 750.316(1)(b). For the reasons that follow, the petition for writ of habeas corpus is DENIED.

## I. BACKGROUND

Petitioner was convicted in the Wayne County Circuit Court, in which he was tried jointly but before separate juries with co-defendant Dawayne Mattews Andrews. This Court recites verbatim the relevant facts relied upon by the

Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendants' convictions arise from the April 30, 2014, shooting death of Marquise Moncrief, who was fatally shot during a robbery at a drug house on Keating Street in Detroit. The prosecutor's theory at trial was that Harris aided and abetted Andrews and a third co-perpetrator, Timothy Brown, by using his status as a regular customer at the house to enable Andrews and Brown to gain access to the house. All three of them then acted in concert to rob Moncrief, who was carrying a large amount of cash, and to steal marijuana.

> Deon Alexander, the owner of the house, and Anthony Johnson, who was working at the house on the night of the offense, both testified at trial. Johnson testified that the house only sold marijuana to regular customers. Johnson denied knowing Andrews and Brown, but said they arrived with Harris, a regular customer, so Johnson agreed to sell them marijuana. After the men entered the house, Johnson heard a gunshot. He saw that Andrews had shot Moncrief in the head, and then he removed money from Moncrief's pockets. According to Johnson, both Andrews and Brown were armed with guns. According to Alexander, defendant Harris and one of the other men both issued instructions for the occupants of the house to get down and not move. After the robbery, Harris, Andrews, and Brown all fled from the house together.

> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

> The prosecution presented evidence that Harris and Andrews were cousins who resided in the same home in 2008. Johnson testified that Harris was with two other men, whom Johnson later identified in photographs as Andrews and Brown, when Harris came to the house after midnight. Johnson and Alexander both testified that the drug dealers at the Keating house would not admit anyone they did not know, and that Harris was a regular customer at the house. Johnson, who was working the house on the night of the offense, testified that he did not recognize the two persons who were with Harris. This evidence supports an inference that Harris knew that Andrews and Brown could not gain access to the house on their own, and that

Harris aided and abetted Andrews and Brown by accompanying them to the drug house to enable them to gain access to the house.

The events following Harris's admission to the drug house further support that the three men entered the house with a common intent to rob the occupants. After the men entered the house, Harris did not follow Brown's order to get down. Alexander was certain that Harris was one of the men who told the other occupants to get down and not move. Andrews's mother testified that Moncrief was carrying $1,000 in cash to pay a deposit on an apartment. After entering the house, Andrews shot Moncrief and then searched Moncrief's pockets. Moncrief's money was missing after the offense. After the robbery, Harris ran with Brown and Andrews as they fled the house.

The prosecution also presented evidence that Harris had a motive to rob because he had no funds in his bank account, and his bondsman was threatening to revoke his bond if he did not make a scheduled bond payment. Harris made the payment approximately five hours after the robbery. Although Profit testified that Harris's SSI payment would have been deposited at midnight on the evening of April 29 and 30, Harris's bank records indicated that the deposit was made the next day, after the bond payment was made.

*People v. Harris*, No. 324987, 2016 WL 1533552, at * 1, 6–7 (Mich. Ct. App. Apr. 14, 2016).

Petitioner's conviction was affirmed. *Id., lv. den.* 500 Mich. 999, 895

N.W. 2d 176 (2017).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Prosecutorial misconduct deprived petitioner of his constitutional right to due process and a fair trial.

II. The trial court's denial of petitioner's motion for a mistrial deprived the petitioner of his constitutional right to due process and a fair trial.

III. Petitioner was denied his right to due process because the prosecution failed to present sufficient evidence.

IV. The trial court's decision to conduct voir dire itself, without questions from attorneys, violated petitioner's right to a fair trial.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state

court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

The Michigan Court of Appeals reviewed and rejected petitioner's first and fourth claims under a plain error standard because petitioner failed to preserve the issues as a constitutional claim at the trial court. The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638(6th Cir. 2017); *cert. den.* 138 S. Ct. 1998 (2018).[1]

## III. DISCUSSION
### A. Claim # 1. The prosecutorial misconduct claims.

Petitioner argues he was denied a fair trial because of prosecutorial misconduct and that trial counsel was ineffective for failing to object to the misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments

---

[1] Respondent urges this Court to deny these claims on the ground that they are procedurally defaulted because petitioner failed to object at trial. Petitioner argues in his first and fourth claims that counsel was ineffective for failing to object. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012)(quoting *Harrington*, 562 U.S. at 103).

Petitioner first claims that the prosecutor personally attacked defense counsel during her closing argument and again in rebuttal. Petitioner claims that the prosecutor improperly accused defense counsel of attempting to deceive the jury. During her closing argument, the prosecutor brought up the fact that defense counsel had focused on whether the victim had been shot at close range or not. The prosecutor labeled this a non-issue:

> "And this is really a non-issue anyways because nobody saw the actual shot. This is just a distraction. These questions are aimed to distract you."

(Tr. 10/28/14, p. 146).

In her rebuttal argument, the prosecutor again responded to defense counsel's questions about close range firing by stating:

> "Gunshot residue testing, you heard the expert, we don't do that anymore. This is all meant to distract you from the issues in the case and the fact that what Deon and Anthony tell you happened."
>
> (*Id.*, pp. 190-91).

The Michigan Court of Appeals rejected petitioner's claim, finding that the prosecutor's remarks were a proper response to defense counsel's questions and arguments:

> The prosecutor's remarks did not clearly exceed the bounds of acceptable argument. Harris's counsel cross-examined the medical examiner and firearms expert regarding stippling and other evidence of close-range firing with the apparent purpose of establishing discrepancies between the physical evidence and the prosecutor's theory of how the shooting occurred. In closing argument, defense counsel argued that the evidence disproved the prosecutor's evidence regarding the shooter's position in relation to Moncrief inside the house. Counsel suggested that Moncrief was not killed during a robbery, but rather was targeted by an assassin. The prosecutor's theory was that Harris was guilty of felony murder under an aiding and abetting theory because he acted in concert with Andrews and Tim Brown to rob the occupants of the drug house, and Moncrief was murdered during the robbery. It was not unreasonable for the prosecutor to argue that Harris's counsel's emphasis on the specific physical circumstances was immaterial to the prosecution's theory and that the absence of stippling was not inconsistent with Johnson's testimony. The prosecutor's use of the words "nonissue" and "distraction" did not push the argument past the boundaries of acceptable argument into a personal attack on defense counsel's character. Accordingly, there was no plain error.

*People v. Harris*, 2016 WL 1533552, at * 2.

It is improper for an attorney to make "unfounded and inflammatory attacks" on opposing counsel. *United States v. Young*, 470 U.S. 1, 9 (1985). However, courts recognize that the "prosecution has "wide latitude" during closing arguments to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F. 3d 225, 233 (6th Cir. 2009). While there is room given to prosecutors to make their case, it is also understood that the prosecutor may not "belittle the defense's witnesses, deride legitimate defenses or offer his own opinion about a witness's credibility." *Id.*

The Sixth Circuit has held that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *Brown v. McKee,* 231 F. App'x. 469, 480 (6th Cir. 2007)(quoting *United States v. August*, 984 F.2d 705, 715 (6th Cir.1992)). A prosecutor's isolated comments in closing argument that the defense was attempting to trick the jury is not an improper disparagement of defense counsel. *Id.* The Sixth Circuit has rejected far stronger comments than the remarks made by the prosecutor in this case both on direct appeal from convictions in federal court and on habeas review of state convictions. See *Key v. Rapelje,* 634 F. App'x. 141, 149 (6th Cir. 2015)(prosecutor's "smoke screen" or "octopus" argument was prosecutor's

characterization of defendant's evidence that did not seriously affected jury's deliberations, and was not prejudicial prosecutorial misconduct required to reverse conviction); *United States v. Burroughs*, 465 F. App'x. 530, 535 (6th Cir. 2012)(prosecutor's statement during closing argument, that defendant possessed both firearms and ammunition, and that "the rest of it" was "excuses and red herrings," did not denigrate defense counsel, so as to support finding of prosecutorial misconduct; statement merely highlighted most damning evidence against defendant, evidence that he in fact handled firearms, and argued that all of defense's explanations about why defendant handled them were irrelevant); *U.S. v. Graham,* 125 F. App'x. 624, 634-35 (6th Cir. 2005)( prosecutor's use of the term "smoke screens" was not an improper attack upon defense counsel, but was simply a remark upon the merits of the defendant's case).

Even if the prosecutor's comments about petitioner's defense were improper, they were not flagrant enough to justify habeas relief. See *Henley v. Cason,* 154 F. App'x. 445, 447 (6th Cir. 2005). The prosecutor's comments were not so incendiary so as to inflame the jury's passion or distract them from determining petitioner's guilt or innocence. See *Davis v. Burt,* 100 F. App'x. 340, 348 (6th Cir. 2004). Finally, the prosecutor's remarks were relatively isolated, were not extensive, and were only a small part of a closing argument that focused heavily on summarizing the evidence presented at trial. *Byrd v. Collins*, 209 F. 3d

486, 532 (6th Cir. 2000).  When combined with the instruction from the trial judge

that the attorneys' arguments, questions, and statements were not evidence, (Tr.

10/29/14, pp. 6-7), the prosecutor's comments did not render the entire trial

fundamentally unfair. *Id.* at 533.

Petitioner next claims that the prosecutor improperly attacked petitioner's

character by referring to him as a coward and accusing him of "weaseling

behavior."  The Michigan Court of Appeals rejected the claim:

> In this case, the prosecutor's remarks were not an ad hominem attack
> on Harris's character; they were part of an argument explaining why
> Harris's defense of mere presence was not credible because he
> repeatedly tried to evade responsibility for his conduct. The
> prosecutor's use of the terms "coward" and "weaseling" does not
> elevate the prosecutor's argument to plain error because a prosecutor
> is not required to confine argument to the blandest possible terms, and
> because the references were brief and were made during an otherwise
> proper argument that focused on the evidence.

*People v. Harris*, 2016 WL 1533552, at * 2 (internal citation omitted).

A prosecutor does not commit misconduct by bringing up a habeas

petitioner's bad character when the character is relevant to the prosecutor's case.

*See e.g. Cristini v. McKee,* 526 F. 3d 888, 900 (6th Cir. 2008).  Even if the

prosecutor's remarks about petitioner were insulting, they were not so pervasive as

to deny petitioner a fair trial. *See Olsen v. McFaul,* 843 F. 2d 918, 930 (6th Cir.

1988).

Petitioner next claims that the prosecutor denigrated the character of petitioner's domestic partner, Tyeshia Profit, whom the prosecutor had called in her case-in-chief. Petitioner claims that Ms. Profit provided an alibi of sorts to petitioner because she testified that she had driven petitioner to the Keating street address where the murder took place by himself and that he had not arrived with his two co-defendants. The prosecutor in her closing argument accused Ms. Profit of being untruthful, of being "a despicable person," "disgusting," and of testifying falsely on behalf of petitioner.

F.R.E. 607, which mirrors M.R.E. 607, states that the credibility of a party may be attacked by any party, including the party calling the witness. While F.R.E. 607 is not controlling on a state trial, this rule of evidence provides "persuasive evidence that allowing the prosecutor to impeach his own witnesses does not rise to a constitutional violation meriting habeas corpus relief." *Lyle v. Koehler,* 720 F. 2d 426, 429 (6th Cir. 1983)(quoting *Lyle v. Koehler,* Civ. No. 80-74578, at 9-13 (E.D. Mich. 1982)). Ms. Profit had been called by the prosecutor as a prosecution witness. In the absence of any Supreme Court case law which holds that a prosecutor cannot attack the credibility of his or her own witness, petitioner is not entitled to relief on this claim.

Petitioner lastly accuses the prosecutor of engaging in an improper "civic duty" argument. Petitioner points to the prosecutor's opening remarks in which

she thanked the jurors for serving on the jury and pointed out the value of jury duty and how it was not wasted time. (Tr. 10/21/14, p. 188).  Petitioner also pointed to the prosecutor's closing remarks that the victim's family had suffered a lot and that it was time for "justice" for the victim. (Tr. 10/28/14, p. 193).

With regards to civic or societal duty arguments, the Sixth Circuit has noted that, "[u]nless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not *per se* impermissible." *Byrd,* 209 F. 3d at 539 (*quoting United States v. Solivan*, 937 F. 2d 1146, 1151 (6th Cir. 1991)).  In this case, the prosecutor's "less than-pointed-remarks" did not rise to the level of remarks designed to incite prejudice in a jury, therefore defeating petitioner's "civic duty" argument claim. *See Puetas v. Overton,* 168 F. App'x. 689, 701 (6th Cir. 2006).  Petitioner's civic duty argument claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision. (Tr. 10/29/14, p. 4). *Cameron v. Pitcher*, No. 99-CV-74906-DT, 2001 WL 85893, * 10 (E.D. Mich. Jan. 4, 2001).

Petitioner also claims that trial counsel was ineffective for failing to object to the prosecutorial misconduct.

A defendant must satisfy two things to establish the denial of the effective assistance of counsel.  First, the defendant must demonstrate that his or her attorney's performance was so deficient that the attorney was not functioning as

the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466

U.S. 668, 687 (1984). The defendant must overcome a strong presumption that

counsel's behavior lies within the wide range of reasonable professional assistance.

*Id*. Second, the defendant must show that such performance prejudiced his

defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland,* 466 U.S. at 694.

To show prejudice under *Strickland* for failing to object to prosecutorial

misconduct, a habeas petitioner must show that but for the alleged error of his or

her trial counsel in failing to object to the prosecutor's improper questions and

arguments, there is a reasonable probability that the proceeding would have been

different. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001). The prosecutor's

comments did not deprive petitioner of a fundamentally fair trial; petitioner is

unable to establish that he was prejudiced by counsel's failure to object to these

remarks. *See Slagle v. Bagley,* 457 F. 3d 501, 528 (6th Cir. 2006).

**B. Claim # 2. The mistrial/judicial misconduct claim.**

Petitioner next claims that the judge erred in refusing to grant a mistrial after

the judge allegedly belittled defense counsel in front of the jury.

In the present matter, during the prosecutor's direct-examination of Ms.

Tyeshia Profit, the court berated defense counsel after defense counsel had

objected. The following exchange took place between the judge, defense counsel, and Ms. Profit:

> Defense Counsel: Objection. Now, would she —
>
> Witness: I don't know what —
>
> Defense Counsel: -- know.
>
> Witness: -- my family.
>
> Defense Counsel: Will you stop when I object, please.
>
> Witness: oh.
>
> Court: No. Hey, wait a minute.
>
> Defense Counsel: Well —
>
> Court: Stop right now. I run the courtroom, Mr. Harris. You don't tell a witness when to talk and when not to talk. Sit down. Your objection is overruled Sit. Now.
>
> Defense Counsel: She's being asked to tell —
>
> Court: Don't — Mr. Harris, did you hear what I said? Sit now... And the next time you have an objection, rise and say the word objection and tell me the grounds for the objection. Don't you communicate with the witness while she's on the stand And don't tell a witness to say something or not say something That's my job, not yours.
>
> (Tr. 10/23/14, pp. 201-202).

Defense counsel later moved for a mistrial based on the judge's remarks, which was denied. (*Id.*, pp. 205-11).

The Michigan Court of Appeals rejected petitioner's claim:

In this case, the challenged conduct involved an isolated rebuke during trial. A single inappropriate act generally will not give the appearance of advocacy or partiality unless it is egregious. In this instance, however, the trial court legitimately intervened when Harris's counsel attempted to usurp the trial court's authority by chastising a witness. It is the court's responsibility to exercise reasonable control over the mode and order of interrogation, and to protect witnesses from harassment or undue embarrassment. MRE 611(a). Moreover, the court's conduct during the rebuke did not convey any views concerning the weight or strength of any of the parties' theories, arguments, or evidence in the case, but rather it was directed at clarifying the attorneys' and the court's respective roles in the conduct of the proceedings after an objection. Thus, under the totality of the circumstances, the trial court's comments were not reasonably likely to create an appearance of advocacy or partiality for or against a party. Therefore, the trial court's conduct did not pierce the veil of judicial impartiality, and accordingly, the trial court did not abuse its discretion in denying Harris's motion for a mistrial.

*People v. Harris*, 2016 WL 1533552, at * 4 (internal citation omitted).

A trial court has the discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity. *Walls v. Konteh,* 490 F. 3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F 3d 352, 354-55 (6th Cir. 1994).

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). The right to an impartial judge is a right whose deprivation a state prisoner may complain of in a federal habeas corpus proceeding. *Tyson v. Trigg*, 50 F.3d 436, 438 (7th Cir. 1995)(citing to *Turner v. Ohio*, 273 U.S. 510, 523 (1927); *In Re Murchison*, 349 U.S. 133 (1955)). Trial judges have a wide latitude in conducting

trials, but they must preserve an attitude of impartiality and scrupulously avoid giving the jury the impression that the judge believes that the defendant is guilty. *Harrington v. State of Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997); *Brown v. Palmer,* 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).

However, in reviewing an allegation of judicial misconduct in a habeas corpus petition, a federal court must ask itself whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process. *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995); *Brown v. Palmer,* 358 F. Supp. 2d at 657. To support an allegation of bias by a state trial judge in order to obtain habeas relief, a habeas petitioner must factually demonstrate that during the trial the judge assumed an attitude which went further than an expression of his or her personal opinion and impressed the jury as being more than an impartial observer. *Brinlee v. Crisp*, 608 F.2d 839, 852-53 (10th Cir. 1979); *Brown,* 358 F. Supp. 2d at 657. A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a significant degree before habeas relief could be granted. *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985); *Brown,* 358 F. Supp. 2d at 657. The Supreme Court has ruled that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias or misconduct. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). "A judge's ordinary efforts at

courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune." *Id.*

Finally, the pertinent question on habeas review is not whether the judge's questions or comments might constitute reversible error if the conviction was being reviewed on direct review but whether the state appellate court's rejection of the judicial misconduct claim was a reasonable or unreasonable application of clearly established federal law. *See e.g. Allen v. Hawley*, 74 F. App'x. 457, 460-61 (6th Cir. 2003).

In the present case, the judge rebuked defense counsel once in front of the jury and only after defense counsel had usurped the judge's role by attempting to reprimand Ms. Profit. Although the trial judge expressed his impatience and frustration with defense counsel, his remarks were in response to defense counsel's failure to accept the court's direction. The judge's conduct was not so prejudicial so as to deprive petitioner of a fair trial. *See Todd v. Stegal,* 40 F. App'x. 25, 27 (6th Cir. 2002). In this case, "The reprimands were not out of line, nor were they substantially adverse to [petitioner] himself. There is no showing that the trial judge ever intimated his opinion on the merits of the case." *Id.* at 27. When viewing the record in its entirety, the judge's conduct throughout the course of the trial did not display the type of "'deep-seated favoritism or antagonism' that would 'leave [a reviewing court] with an abiding impression that the trial judge permitted

himself to become personally embroiled with [defense counsel]' so as to constitute a Due Process violation." *Gordon v. Lafler*, 710 F. App'x 654, 664 (6th Cir. 2017), *cert. denied*, No. 17-1404, 2019 WL 113079 (U.S. Jan. 7, 2019)(citing *Liteky,* 510 U.S. at 555). Any prejudice was also cured by the fact that the judge instructed the jury that his rulings were not evidence and further advised the jurors that if they believed that the judge had an opinion about how they should decide the case, that they should disregard that opinion and that they were the only judges of the facts. (Tr. 10/29/14, p. 7). *Todd v. Stegal,* 40 F. App'x. at 28. Petitioner is not entitled to relief on his second claim.

## C. Claim # 3. The sufficiency of evidence claim.

Petitioner next claims that there was insufficient evidence presented to convict him of first-degree felony murder, arguing that the evidence at most established that he was merely present at the home at the time of the robbery and murder.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v.*

*Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews,* 319 F. 3d at 789(*citing to People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

The elements of armed robbery under Michigan law are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon. *See O'Guin v. Foltz,* 715 F. 2d 397, 400 (6th Cir. 1983).

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

1. the crime charged was committed by the defendant or some other person;
2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and

3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Riley v. Berghuis,* 481 F. 3d 315, 322 (6th Cir. 2007)(citing *Carines*, 460 Mich. at 757-58).

Under Michigan law, to convict a defendant of felony murder under an aiding and abetting theory, the prosecutor must show that someone killed the victim during the underlying predicate felony, that the defendant assisted that person in killing the victim, and that the defendant either intended to commit the crime or he or she knew when he or she gave the assistance that the other person intended to commit the crime. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 858 (E.D. Mich. 2003)(*citing People v. Smielewski*, 235 Mich. App. 196, 207; 596 N.W. 2d 636 (1999)).

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *Fuller v. Anderson,* 662 F. 2d 420, 424 (6th Cir. 1981). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N. W. 2d 728 (1995). The quantum or amount of aid, advice, encouragement, or counsel rendered, or the time of rendering, is not material if it had the effect of inducing the

commission of the crime. *People v. Lawton,* 196 Mich. App. 341, 352; 492 N. W. 2d 810 (1992).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *People v. Wilson*, 196 Mich. App. 604, 614; 493 N. W. 2d 471 (1992). The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N. W. 2d 359 (1995). An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Turner,* 213 Mich. App. at 568-69.

Mere presence, even with knowledge that a crime is being committed, is insufficient to establish that a defendant aided and abetted in the commission of the offense. *People v. Norris*, 236 Mich. App. 411, 419-20; 600 N. W. 2d 658 (1999); *Fuller v. Anderson*, 662 F. 2d at 424. "[H]owever, a claim of mere presence is not a 'catch-all excuse' to defeat an inference of guilt beyond a reasonable doubt. In evaluating a 'mere presence' defense, a factfinder must distinguish, based upon the totality of the circumstances, between one who is merely present at the scene and

one who is present with criminal culpability." *See Long v. Stovall*, 450 F. Supp. 746, 754 (E.D. Mich. 2006)(internal citation omitted). An aider and abettor who is intentionally present during the commission of a crime may be silent during the crime's commission, "but by his demeanor, or through behavior and acts not directly related to the crime, provide 'moral support' that is recognizable to, and relied upon by, the principal. Such acts may be silent and may not be overt but may still amount to more than 'mere' presence." *Sanford v. Yukins,* 288 F. 3d 855, 862 (6th Cir. 2002). Michigan's "broad definition" of aiding and abetting "easily encompasses situations where the alleged aider and abettor, although silent and not committing acts directly related to the crime, was not 'merely' present, but providing emotional encouragement and support." *Id.*

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner aided and abetted in the robbery and murder and was not merely present at the time of the crime. First, petitioner and his co-defendants arrived at the drug house together, which would raise "a compelling inference that they were previously acquainted." *Davis v. Lafler*, 658 F.3d 525, 533 (6th Cir. 2011). In fact, one of petitioner's codefendants was his cousin. This would also establish that petitioner actively aided and abetted in the robbery and murder. *See e.g. United States v. Quadar,* 223 F. App'x. 22, 24 (2nd Cir. 2007). Secondly, petitioner engaged in an overt act which indicated his involvement in the robbery,

when he ordered the people in the drug house to get on the ground. (Tr. 10/21/14, pp. 259-60, 280, Tr. 10/22/14, p. 14). Petitioner's actions at the time of the crime were more consistent with that of a co-conspirator than an innocent bystander and further support the jury's finding that he aided and abetted the robbery and murder. *Davis,* 658 F. 3d at 533. Third, the fact that petitioner fled the scene with the co-defendants supports an inference that he was actively involved in the crime. *Id.*

Finally, "A defendant's 'reactions to the circumstances' of a crime may suggest involvement (or for that matter lack of involvement) with a crime." *Bell v. Jackson*, 379 F. App'x. 440, 446 (6th Cir. 2010). Although petitioner claimed to be merely present at the house to purchase drugs, he did not fall to the ground as the other customers did when they were ordered to do so by the robbers, suggesting that petitioner was involved with the perpetrators of the crime and was not a mere innocent bystander.

In light of the evidence presented in this case, the Michigan Court of Appeals did not unreasonably apply clearly established federal law in determining that the evidence was sufficient to convict petitioner on an aiding and abetting theory. *See Brown v. Konteh,* 567 F. 3d 191, 209-12 (6th Cir. 2009). In particular, "in light of the strong circumstantial evidence" that petitioner "was involved in the planning and execution of" these crimes, "at least one 'rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt.'"

*Davis v. Lafler*, 658 F. 3d at 535. When petitioner's case is reviewed pursuant to the AEDPA's "double deference" standard, this Court is unable to state that the Michigan Court of Appeals' decision that there was sufficient evidence to convict petitioner under an aiding and abetting theory was"so far out of line with the very general standard set forth in *Jackson v. Virginia* as to warrant granting [petitioner] habeas relief." *Id.*

### D. Claim # 4. The *voir dire* claim.

Petitioner finally claims that the judge's decision to conduct *voir dire* himself, without allowing the attorneys to individually question the jurors, violated his right to a fair trial. Petitioner also claims that counsel was ineffective for failing to object to this procedure.

"[P]art of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992). "[W]ithout an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Rosales–Lopez v. United States*, 451 U.S. 182, 188 (1981). The Supreme Court, however, cautioned that "[t]he adequacy of *voir dire* is not easily the subject of appellate review[,]." *Morgan*, 504 U.S. at 730. The Supreme Court emphasized that a state trial judge

"retains great latitude in deciding what questions should be asked on *voir dire*."

*Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991).

M.C.R. 6.412 (C)(2) indicates that:

> The court may conduct the examination of prospective jurors or permit the lawyers to do so. If the court conducts the examination, it may permit the lawyers to supplement the examination by direct questioning or by submitting questions for the court to ask.

Under Michigan law, "A defendant does not have the right to have counsel conduct the *voir dire*." *People v. Washington*, 468 Mich. 667, 674; 664 N. W. 2d 203 (2003). If a trial judge conducts *voir dire*, an abuse of discretion occurs if the judge does not adequately question prospective jurors about potential bias to allow the parties to intelligently exercise challenges for cause. *Id*.

M.C.R. 6.412 is similar to Fed.R.Crim.P. 24(a)(1), which states in pertinent part: "The court may examine prospective jurors or may permit the attorneys for the parties to do so." It is permissible for a federal district court judge to not allow counsel to question prospective jurors but for the judge to conduct the *voir dire*. See *United States v. Johnson*, 584 F.2d 148, 155, n. 14 (6th Cir. 1978). "In the majority of federal criminal cases, as it turns out, the trial judge chooses to conduct *voir dire* himself [or herself]." *United States v. Sheldon*, 223 F. App'x. 478, 480–81 (6th Cir. 2007)(citing 9 Moore's Federal Practice § 47.10[3][e][i] (3d ed. 2006)).

"The Sixth Amendment makes no mention of the *voir dire* process, let alone whether or not it must be conducted by the trial judge or the parties' attorneys." *United States v. Sheldon*, 223 F. App'x. at 480. The Supreme Court has not specifically held that the federal constitution requires that defense counsel must be personally allowed to conduct *voir dire*. Given the lack of holdings by the Supreme Court on the issue of whether a state court violates a habeas petitioner's due process rights by conducting *voir dire*, the Michigan Court of Appeals' rejection of petitioner's claim was not an unreasonable application of clearly established federal law. See *Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).

The Court rejects the related ineffective assistance of counsel claim. Michigan law and procedure permits a trial judge to personally conduct *voir dire*. Trial counsel was not ineffective for failing to raise a futile objection. See *U.S. v. Johnson*, 9 F. App'x. 373, 374 (6th Cir. 2001)(citing *McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996)). Petitioner is not entitled to relief on his fourth claim.

## IV. CONCLUSION

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or

federal conviction.  28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). [2]

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *Id.*, at 484.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).  "Good faith" requires a showing that the issues raised are not

---

[2] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

frivolous; it does not require a showing of probable success on the merits. *Foster*, 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id*.

## V. ORDER

Based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** That a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner will be **GRANTED** leave to appeal *in forma pauperis*.


s/Denise Page Hood_____
Chief Judge, U. S. District Court

Dated: March 28, 2019